Filed 6/28/13  In re E.E. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re E.E. et al, Persons Coming Under the Juvenile Court Law. | |
| | D063080 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J517898A-B) |
| v. | |
| RUBEN E. et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of San Diego County, David B. Oberholtzer, Judge.  Affirmed.

Suzanne M. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant Ruben E.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant Edwin V.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Ruben E. appeals a juvenile court order that requires his visits with his daughter, E.E., occur only during conjoint therapy sessions at his expense. Edwin V. appeals an order made at the same hearing requiring his visitation with his daughter, E.E.'s half-sister, A.P., remain supervised.[1] We hold the court did not abuse its discretion in making these visitation orders and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2010, the San Diego County Health and Human Services Agency (the Agency) petitioned under Welfare and Institutions Code section 300, subdivision (b)[2] on behalf of seven-year-old E.E., five-year-old A.P., and their younger half-sister, M.B., alleging (1) the girls' mother, Lorena P., had left them unattended and inadequately supervised on a busy street and when Lorena was located two hours later, she was intoxicated; (2) the children were exposed to violent confrontations in the family home

[1]     Edwin also objects that dependency court minute orders designate him as A.P.'s biological father, rather than her presumed father. He asserts these incorrect designations of his paternal status threaten his statutory rights and he asks this court to correct the record. Edwin is correct that at the hearing on October 7, 2010, the court found him to be A.P.'s presumed father and entered a judgment of paternity to that effect. However, the error in the minute orders appears to be merely clerical. Edwin has not shown that he suffered any prejudice from the error and his concern that he may suffer prejudice in the future is only speculation.

[2]     Statutory references are to the Welfare and Institutions Code unless otherwise specified.

between M.B.'s father, Dale B., and Lorena, and Dale and Lorena were in violation of an active restraining order; and (3) Lorena drank alcoholic beverages to excess, rendering her unable to provide adequate care for her children.

The social worker reported the children were taken into custody after Lorena left them on a street when she was walking to a liquor store. She was intoxicated and told them she wanted them to die.

Ruben and Edwin both disclosed criminal histories. Ruben said he had frequently spent time with E.E. during the first year of her life and he had seen her two times in the past year. He wanted to take care of her, but was not financially able to do so at that time. Edwin said he had spent time with A.P. during times when he was not incarcerated, and she had lived with him and the paternal grandmother for several months in 2007 while Lorena was using methamphetamine. He said he was willing to participate in services. Both Ruben's and Edwin's case plans required them to participate in parenting education, a 12-step program, and drug testing.

In October 2010, the court found the allegations of the petitions to be true. The court found E.E. and A.P. to be dependent children of the juvenile court and ordered them placed in relative care.

Ruben was released from jail in January 2011 after being incarcerated because of a domestic dispute with his girlfriend. The social worker issued him a bus pass for March, but he did not visit E.E. He telephoned her twice that month. He tested negative for drugs in January and February. Edwin was paroled into an in-patient drug program, but he violated his parole conditions when he used methamphetamine.

3

At the six-month review hearing in April 2011, the court found neither Ruben nor Edwin had made substantive progress with the provisions of his case plan. However, the court continued each man's services for an additional six months.

The social worker said the Agency had lost contact with Ruben in February 2011 and it was reported that he had left California. Edwin was released from custody and began substance abuse out-patient treatment. He said he had been trying to visit A.P. every weekend.

At the 12-month review hearing in November 2011, the court continued the children's placements, ordered six more months of services for Edwin, but found Ruben had not made substantive progress and terminated his services.

Subsequently, Edwin stopped attending substance abuse treatment. The social worker reported he had been having clean drug tests, but he did not test in January 2012.

At the 18-month review hearing in March 2012, the court found Lorena had made substantive progress with the provisions of her case plan and ordered E.E. and A.P. placed with her. It found Edwin had not made progress and terminated his services.

In August 2012, the social worker reported that Edwin, his girlfriend and their newborn child were living with Edwin's parents. Edwin had visits with A.P. twice each week supervised by his parents. He had been denied his request for unsupervised visits because he had not drug tested when requested and A.P. had reported he was sometimes not at the grandparents' home when she was visiting. In November, however, the family court mediator recommended Edwin have regular unsupervised visitation with A.P. at the grandparents' home.

4

Ruben had no contact with the Agency from February 2011 until he returned to San Diego in May 2012. In May and June, the social worker supervised three visits. The visits went well, but Ruben said he had accepted a job in northern California and would soon be leaving San Diego. Then, in August, he reported he was back in San Diego and wanted to visit E.E. Lorena said E.E. was hurt that Ruben had been in and out of her life and had not been a reliable source of support. However, he telephoned E.E. regularly and by mid-October she was ready to visit him.

At the family maintenance review hearing in December 2012, the social worker testified that Edwin had participated in a substance abuse program for a time, but then stopped attending, saying it was a waste of time. She said he claimed he had been attending 12-step meetings and had been sober for ten months. The social worker did not agree with the family court services mediator's recommendation that Edwin have unsupervised visits with A.P. She said he had not completed any part of his case plan, his sobriety was short lived and he had been in drug abuse treatment for only a short time.

Edwin testified he visited A.P. three times each week. He claimed he had not used heroin since February 2012 and denied using methamphetamine or alcohol. He said he had not drug tested in June when asked to do so because he did not have proof of his identity with him that day. He said he was in a drug abuse treatment program and a 12-step program.

After considering the evidence and argument by counsel, the court ordered E.E. and A.P. placed with Lorena and terminated jurisdiction. It ordered Ruben's visitation with E.E. be only during conjoint therapy sessions at Ruben's expense. It ordered

5

Edwin's visits with A.P. continue to be supervised and ordered him to drug test every week for six months, and noted six months of clean tests would be sufficient to allow him to bring a motion in family court seeking unsupervised visitation.

DISCUSSION

*I. Ruben's Appeal*

Ruben contends the court abused its discretion by requiring his visitation with E.E. be only during conjoint therapy at his expense. He argues since he cannot afford to pay for therapy, he will in effect be denied visits. He argues it is in E.E.'s best interests for them to have contact.

When the juvenile court terminates its jurisdiction over a child, the court may issue an order determining the custody of, and visitation with, the child. (§ 362.4.) When fashioning orders under section 362.4, the court is guided by the child's best interests. (*In re John W.* (1996) 41 Cal.App.4th 961, 973; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712.) The court considers "the totality of the child's circumstances when making decisions regarding the child." (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.) Orders regarding visitation may be reversed only upon a clear showing of an abuse of discretion. (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Ruben has not shown the court abused its discretion by requiring his visits with E.E. be only during conjoint therapy. He had visited her only two times in 2010 and three times in 2011, and had not been in contact with her during most of the dependency

6

period. At first, he was incarcerated because of a domestic dispute with his girlfriend. He was released in February 2011, but then the Agency could not locate him and it was reported that he had moved out of San Diego County. He spoke to E.E. in April 2011 and promised to visit, but he did not keep his promise. He did not appear again until May 2012. He and E.E. had three supervised visits in May and June, but then he said he had accepted a job in northern California and would be leaving San Diego. E.E. did not want him to go, and Lorena said E.E. was so hurt by his lack of support she refused to see him for a time. The court reasonably concluded that because E.E. had been emotionally upset by Ruben's pattern of absenting himself from her life and not being a source of support for her, it was in her best interests to require their visitation be in a therapeutic setting. Ruben has not shown an abuse of the court's discretion.

## II. Edwin's Appeal

Edwin contends the court abused its discretion by ordering his visitation with A.P. remain supervised. He argues the family court mediator recommended lifting the supervision requirement since he was compliant with an ongoing substance abuse treatment program, had nine months of sobriety and had completed parole.

Edwin has not shown the court abused its discretion by requiring his visits continue to be supervised. In August 2010, at the time the children became dependents of the court, Edwin was in prison for a parole violation. His contact with A.P. had been sporadic because he had been periodically incarcerated for criminal activity, and he acknowledged a history of abusing heroin. He was released from custody in early 2011 and started out-patient treatment, but by February 2012, he had stopped attending, saying

7

it was a waste of time. He did not drug test in September and admitted he would have tested positive for marijuana if he had tested at that time.

Although Edwin was in an out-patient program drug treatment program at the time of the hearing in December, his history of remaining in a program for a time and then relapsing supports the juvenile court's decision to require supervision during visits to continue until Edwin can demonstrate a longer period of sobriety. The fact that the family court mediator recommended supervision no longer be required is not controlling. There are significant differences between the family court and the juvenile court. Both the family court and the juvenile court focus on the best interests of the child, but " '*[t]he presumption of parental fitness that underlies the custody law in the family court just does not apply to dependency cases.*' " (*In re Chantal S., supra*, 13 Cal.4th at p. 206.) The juvenile court has been closely involved with protecting the child and has discretion to make orders concerning custody without preferences or presumptions that are considered in family court proceedings. (*Ibid.*) The court reasonably left the supervision requirement in place, required Edwin to drug test once each week and ruled that six months of clean tests would constitute changed circumstances sufficient to allow him to file a motion seeking to lift the supervision requirement. The court's order was appropriate. Edwin has not shown an abuse of discretion.

DISPOSITION

The orders are affirmed.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.